In re FINKELSTEIN.

No. 26916.

District Court, E. D. New York.

Oct. 15, 1945.

Henry W. Parker, of New York City, for petitioner (for the motion).

Louis Bierfass, of New York City, for bankrupt (opposed).

KENNEDY, District Judge.

The Morris Plan Industrial Bank of New York moves for an order correcting an order entered on December 21, 1934, discharging the bankrupt. The order of discharge was without qualification.

On August 24, 1928, the bankrupt was discharged in the first of three voluntary proceedings. On November 4, 1929, the moving creditor recovered judgment against him. On April 21, 1932, the bankrupt filed his second voluntary petition and scheduled the moving creditor's claim. On November 18, 1932, discharge was denied the bankrupt because there was a prior discharge within the statutory period (six years). On August 24, 1934, the six year period after the first discharge order expired. On September 27, 1934, the bankrupt filed his third voluntary petition. Again he scheduled the claim of the moving creditor. The attention of the Court was not called to the denial of the discharge in 1932 (as to all the creditors listed except one Conlew, Inc.) and on December 21, 1934, an unqualified order of discharge was entered, this being the order to which the motion is addressed.

All these facts are undisputed. Indeed, there is only one factual controversy, and for reasons which will appear later I do not consider that important. The bankrupt claims that due notices of a meeting of creditors and application for discharge were given to all the creditors including the petitioner. The petitioning creditor in this proceeding does not deny that it received a notice. It says that its records fail to disclose whether it did or not.

The facts at bar bear a curious similarity to those in Chopnick v. Tokatyan, 2 Cir., 1942, 128 F.2d 521, certiorari denied 317 U. S. 667, 63 S.Ct. 72, 87 L.Ed. 536.

 There, as here, there were three bankruptcies. There, as here, the petitioning creditor's claim arose between the first discharge and the second voluntary petition. The District Court in that case stayed the proceedings of the petitioning creditor in the State court. The Circuit Court reversed, holding that the denial of discharge in the second proceeding was a bar to discharge, and that the petitioning creditor was free to exhaust his remedy in the State courts without interference. Judge Swan, writing in the case, refused to follow Prudential Loan & Finance Co. v. Robarts, 5 Cir., 1931, 52 F.2d 918. The rationale of the Robarts case is that mere denial of the discharge is not the equivalent of refusal of discharge on the grounds set forth in the statute. 11 U.S.C.A. § 32, sub. b. Judge Swan says that no matter what the ground of denial is, it still acts as a bar on any application for discharge. I mention this only because the bankrupt in opposition to this motion strongly urges that the Robarts case rules this one. That case simply is not law in this Circuit. If I understand the Chopnick decision correctly there can be no doubt that power resides in the courts to grant the relief which here is sought. The real question before me is whether after inaction by the petitioning creditor for nearly eleven years the motion ought to be granted. In other words, the question to be decided is whether laches on the part of a creditor precludes the amendment of an unqualified order of discharge which has been secured by an imposition upon the Court. I think I am justified in stating the problem this way because the fact that there were three bankruptcies in this case and the other circumstances here present, in my judgment, bring this matter within the statement by Mr. Justice Sutherland in Freshman v. Atkins, 1925, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193, where speaking of an application for discharge eight years after denial of discharge in the prior proceedings, he said (269 U.S. at page 124, 46 S.Ct. at page 42, 70 L.Ed. 193): "To ignore it,[1] and make a second application, involving a new hearing, was an imposition upon and an abuse of the process of the court, if not a clear effort to circumvent the statute by enlarging the statutory limitation of time within which an application for discharge must be made." Judge Patterson dealt with this question in Re Zeiler, D.C., S.D.N.Y., 1937, 18 F.Supp. 539. There the order of discharge was entered on January 22, 1936. The moving creditor asked on January 19, 1937, that the order be amended so as to exclude his claim. Having decided that the merits were with the moving creditor, Judge Patterson said that the lapse of one year did not constitute laches on his part. But he then went on to say that he thought the question of laches not a critical point. He based this statement upon Freshman v. Atkins, supra. Judge Patterson's remark is clearly obiter, because it is preceded immediately by a finding that in his case there was no laches. But now it is necessary to decide whether the lapse of a very long time (more than 10 years), which surely would be considered laches in the absence of a clear excuse for inaction, will operate to validate an order secured by an imposition upon the Court.

The Supreme Court has never said that an order secured under circumstances like those at bar is void. On the contrary, Bluthenthal v. Jones, 1908, 208 U.S. 64, 28 S.Ct. 192, 52 L.Ed. 390, indicates that such orders are not void. There, discharge was denied in the Georgia district in 1900. Subsequently, the bankrupt, in a new proceeding, secured a discharge in the Florida district. One of his creditors then sought to enforce a judgment by levy of execution in the Florida courts. The Supreme Court affirmed a holding by the Supreme Court of the State of Florida that an injunction against the levy of execution was proper. Mr. Justice Moody says that it was too much to expect that the District Court of Florida would search the records of all other District Courts, and that when a creditor intentionally remains away and lets the discharge order stand, he is bound by it and may not thereafter proceed under his judgment. On the other hand, in Freshman v. Atkins, supra, where the bankrupt had been denied discharge in 1915, the Supreme Court upheld an order made in a second proceeding in 1923 denying discharge. There the Court took judicial notice of the pendency of the former application. The opinion distinguishes Bluthenthal v. Jones, supra, on the ground that

---

[1] The denial of discharge.

while one district court is not bound to search the records of another, it may nevertheless give effect to its own records in another interrelated proceeding.

I know very well that a distinction can be made between a situation where the bankrupt, after long inaction, himself applies to the Court to effectuate or secure a discharge order unlawfully obtained, and one in which a creditor seeks to amend such an order. Freshman v. Atkins illustrates the first situation, and the case at bar the second. But no matter how the parties may be aligned, the root problem is whether a wrong-doer may keep the fruits of his wrong because the outcry by his victims has been belated. In behalf of the bankrupt it is said that because of the creditor's inaction the debt is nearly doubled, and this furnishes a reason why it should be wiped out by a discharge secured under circumstances amounting to a fraud upon the Court. The bankrupt, in other words, criticizes the moving creditor because it failed to harass him promptly. I think these arguments answer themselves.

■■ Although I admit it is in no way controlling, I mention the fact that in at least two instances the State courts have taken the position that a discharge improperly secured is a nullity. Broderick v. Glicker, 174 Misc. 492, 21 N.Y.S.2d 472; In re Weiss, Sup., 24 N.Y.S.2d 257, not reported [in State reports]. It is true that there is one decision holding the contrary. Ehnes v. Pvinick, —— Misc. ——, 58 N.Y.S. 2d 363. Possibly the first two decisions are qualified by the fact that in both it was the bankrupt who applied for relief.

■ The moving creditor relies upon Rule 60(a), Federal Rules Civil Procedure, 28 U.S.C.A. following section 723c, which relates to clerical mistakes in judgments, orders or other parts of the record, and the correction of errors arising from oversight or omission. I suppose the failure of the Court to review its own records in connection with applications for discharge may be called "oversight," or possibly even a "clerical mistake." But I doubt that the framers of the rules intended to include within the scope of Rule 60(a) a situation where a suitor imposes upon the Court. If they did, I think they would have used much broader language. Moreover, to adopt petitioner's argument would be to assent to the proposition that in every case where a discharge is sought the duty is upon the Court to search its own records, and to edit the bankrupt's papers where he wilfully omits facts which would bar the granting of relief. I do not believe there is any such duty upon the Court. Discharge from debt in bankruptcy is not analogous to anything else in the law that I know of. It is a privilege given to an honest bankrupt. When he secures it by an act of dishonesty in connection with the very papers that he submits, surely the responsibility for the granting of the improvident order should not be shared with him by the Court. He alone should bear the consequences.

I have the power to amend. In re Zeiler, D.C., 18 F.Supp. 539, 541. The merits are with the petitioning creditor. I believe that its inaction does not require the denial of relief.

The motion is granted.